IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tommie Strickland,                                    :

                   Petitioner            :        Civil Action 2:09-cv-00681

     v.                                             :        Judge Marbley

                          :        Magistrate Judge Abel
Warden, Southern Ohio Correctional
Institution,                                          :

                 Respondent            :

# Report and Recommendation

Petitioner Tommie Strickland, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. §2254.  This matter is before the Magistrate Judge on the petition, respondent's return of writ, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

On March 12, 2005, Dishawn Parks was killed at the Center City Mall in Columbus, Ohio by a single gunshot to the chest. (Transcript of Second Trial, 119-22 and 130.) The incident was captured by video surveillance cameras.  *Id.*, 325-26. Parks was at the mall to sell marijuana. He was carrying a cell phone, money and marijuana. *Id.*, 136. After his death, no money or marijuana was found on Parks' body. *Id.*, 92-93.

Witnesses testified they saw petitioner Tommie Strickland at the mall with Keon Lewis.  *Id.*, 199, 308-10. Strickland was armed with a handgun.  *Id.*, 186-87. Christian

Dawson heard Keon Lewis say to Strickland, "Hey, man, he had money, he had weed. . . . [W]e ought to get him." *Id.*, 197. Later, just before the homicide, Dawson saw Strickland walking with Parks toward the restroom. *Id.*, 207-08. Raymond McNeal saw Strickland and Lewis robbing Parks. McNeal was walking toward the door to the bathroom when Parks came out with his hands up. Strickland held a handgun and Lewis held Parks' Jordan tennis shoes. Parks tried to get his Jordans back, and Lewis fled. Parks then struggled with Strickland for control of Strickland's handgun. McNeal heard a shot and a scream. Then Strickland ran by McNeal, fleeing the mall. *Id.*, 308-10, 325-26 and 330. Erin Crossell testified that Strickland told her that he had been involved in the shooting, that he and the victim had struggled with the gun, and it went off. *Id.*, 453-54. Also admitted into evidence was Allen Wright's testimony at a juvenile court proceeding that Strickland told him he had killed Parks during a robbery at the mall. *Id.*, 438.

The Ohio Tenth District Court of Appeals summarized the facts and procedural history relating to the claims petitioner raises in habeas corpus as follows:

> Appellant was bound over to the jurisdiction of the Franklin County Court of Common Pleas, General Division, from the juvenile court. The Franklin County Grand Jury indicted appellant on the above charges and specifications in regards to the March 12, 2005 shooting of Dishawn Parks. Appellant pled not guilty, and a jury trial ensued in March 2006.
>
> At trial, plaintiff-appellee, the State of Ohio, called Christian Dawson to testify. Dawson testified that he overheard appellant and Keon Lewis talking about what they were going to do to Parks. Appellant's counsel objected, and the parties held a sidebar conference. At the sidebar, appellee indicated that Dawson would testify that he heard Lewis tell appellant

2

that Parks had cash and marijuana and that Lewis stated, "[w]e should rob him." (Mar. 1, 2006 Session Tr. ["Tr."], 124.) The trial court stated that appellee's line of questioning posed a Sixth Amendment Confrontation Clause issue pursuant to *Crawford v. Washington* (2004), 541 U.S. 36. Appellant's counsel stated he would "[a]bsolutely" object if the prosecution continued with such questioning. (Tr., 126.) The trial court cautioned appellee that:

THE COURT: You understand that *Crawford* involves a constitutional right. If you promote this it's a violation of [appellant's] constitutional rights that will lead to a mistrial.

[APPELLEE]: I understand, I won't.

(Tr., 126.)

After the sidebar concluded, Dawson testified as follows:

Q. Chris, did you ever hear [appellant] saying anything about what he was planning on doing?

A. At first, it wasn't even his idea. [Lewis] had brought it up to us.

(Tr., 131-132.)

Appellant's counsel objected, and the trial court sustained the objection. Appellant's counsel then stated: "I'm going to have a motion." (Tr., 132.) The trial court allowed appellee to finish questioning Dawson. During cross-examination of Dawson, the parties held a sidebar conference and appellant's counsel asked for a mistrial based on Dawson's testimony concerning Lewis. The trial court ordered a transcript of Dawson's testimony to determine what the witness exactly said, but the court stated that if there was a *Crawford* violation, "then that might put us at a mistrial mode." (Tr., 146.) Appellee indicated that it only tried to elicit what appellant himself had stated. Ultimately, the trial court adjourned for the evening.

The next day, the parties discussed appellant's mistrial motion.

3

Appellee opposed the motion, arguing that Dawson had not actually stated what Lewis said to appellant. Appellee also argued that there was no *Crawford* violation because Lewis' statement was not "testimonial." (Tr., 157.)

Appellant's counsel argued:

* * * [Dawson] did certainly relay what [Lewis] had said, or certainly thought by virtue of what was said in the conversation and who said it.

So I do think you have a *Crawford* issue because certainly we're not able to cross-examine [Lewis] on what happened, whether there was a discussion and/or what he said in this particular case.

(Tr., 158-159.)

Appellant's counsel then stated:

* * * I have not had an opportunity to talk to [appellant] in any length in terms of our options here, in terms of what, but we did have a concern over the questioning that was raised, and certainly, the response from Mr. Dawson. So we do think it is something that should the defense wish to proceed on, it is a mistrial issue, and that's all. Thank you.

(Tr., 159.)

The trial court declared a mistrial, concluding:

Okay. Well, the context of the question was asked of Mr. Dawson along with the response being, one, not responsive to the question, and that he was-the question was focusing on [appellant], but the way the response came it did put an improper inference in the testimony in that nature. I'll declare a mistrial in this matter. We will reset the matter for trial.

(Tr., 160.)

Next, the following discussion occurred between the parties:

[APPELLANT'S COUNSEL]: * * * I guess [appellant] has a couple of questions as to options here as to whether there are any options as, or whether the Court is intending to declare a mistrial regarding the parties['] position.

THE COURT: I intend to declare a mistrial from hearing testimony of the witness and potential for *Crawford* violations in front of the jury, and their interpretation of it. I don't see anywhere where it's a fair trial, so it's involving the Sixth Amendment, it's plain err. There's no curative instruction I can do to fix the scenario. With that, I declare a mistrial.

[APPELLANT'S COUNSEL]: Thank you, Your Honor.

[APPELLEE'S COUNSEL]: Just to make the record clear, [appellant's counsel] did request the mistrial yesterday, and he did renew that motion this morning.

THE COURT: Absolutely.

* * *

* * * I'm not saying it's [appellee's] fault for the mistrial, either. So I assume that I'm going to get a double jeopardy motion from [appellant's counsel] but, you know, [appellee] was very conscientious in what he was doing. He was following my instructions. I was very candid early on about the potential. So, you know, if your allegation is that the State is at fault, the witness is the one who opened up the response to the question.

* * *

[APPELLANT'S COUNSEL]: And that's what I was asking, Your Honor, because in light of the Court's position and comments at this moment in time, my purpose for asking the question was, I guess I was curious as to whether the Court would give [appellant] the option of electing to proceed or not.

THE COURT: He can't waive it. There's nothing I can do to fix it. I mean, the time is in front of the jury. You know, we have

5

a person here who we can't confront who the question as to [appellant] says they implicate, the co-defendant is not available, you know, I don't see where we have any option here.

[APPELLANT'S COUNSEL]: No, I understand. And I guess that's what I was trying to glean from the Court's comments. It's my understanding even if we withdraw the motion for mistrial-

THE COURT: I'm going to declare a mistrial.

[APPELLEE'S COUNSEL]: You can't withdraw a motion for mistrial.

THE COURT: Well, it doesn't matter. I would still declare it even if no mistrial has been asked for, it's going to happen.

[APPELLANT'S COUNSEL]: Well, I understand. And as I indicated, in light of my, certainly inability to discuss this further with [appellant], it appears to be academic in light of what the Court is going to do.

THE COURT: In all reality, I would have mistried it anyway. It was within my purview to mistry it.

[APPELLANT'S COUNSEL]: I understand. I guess in fairness to [appellant], in light of the Court's comments at this time, I do withdraw our motion for mistrial.

THE COURT: Well, we can't. It's already been granted, but that's secondary.

(Tr., 161-164.)

The trial court then rescheduled appellant's case for retrial and, thereafter, on March 2, 2006, the trial court journalized its decision to grant a mistrial. In response, appellant's counsel filed a motion to bar appellant's reprosecution. Appellant's counsel argued that double jeopardy barred the reprosecution in part because the trial court proceeded with the mistrial

despite appellant's counsel withdrawing the mistrial motion. The trial court overruled the motion, stating:

The Court finds that the mistrial in this action was predicated upon the request of the Defendant. The Court does not find that the mistrial was precipitated by prosecutorial misconduct. * * *

The trial court also stated:

* * * Defendant's attempt to withdraw his motion for a mistrial was not timely because the motion had already been granted. * * *

The Defendant did not attempt to withdraw his motion for a mistrial until after the Court opined that the mistrial was not caused by prosecutorial misconduct. Presumably, [appellant] had intended to move the Court to bar a retrial based upon prosecutorial misconduct. [Appellant] sought to withdraw [his] motion only after learning that the mistrial was the result of a non-responsive answer of a witness and not the deliberate actions of the prosecutor. * * *

During the second trial, appellee again called Dawson to testify. Over objection of appellant's counsel, Dawson testified as follows:

Q. Okay. And you testified earlier that you had heard a conversation between Tommie and Keon?

A. Yes.

Q. What was said?

A. Hey, man, he had money, he had weed.

Q. Who said that?

A. Keon, sir.

* * *

7

Q. Okay. Who was he saying that to?

A. Tommie.

Q. Who was he talking about?

A. Dishawn Parks.

(Vol. I Tr., 197.)

Next, appellee called Allen Wright to testify. Wright refused to answer any questions on the stand and asserted his Fifth Amendment privilege against self-incrimination. Wright indicated that he was doing so on the advice of his attorney. As a result, appellee wanted to submit into evidence the testimony Wright previously provided at appellant's bindover hearing from juvenile court.

Appellant's counsel objected, and the parties discussed appellee's request. Wright's attorney stated:

* * I have advised my client * * * to invoke his Fifth Amendment rights against self-incrimination. He's currently being held on two counts of two unrelated felonious assault charges, one of which is a drive-by shooting. Seeing how this involves a shooting, also, potentially with gang members, I've advised him it would be in his best interest to remain silent in fear that anything he would say here could be used against him at a later date.

* * *

* * * I can't advise him to talk about a shooting.* * *

(Vol. II Tr., 404-405, 407.)

Appellant's counsel then initially indicated that it was doubtful whether the trial court would "allow us to go into any circumstances that involve anything for which he would stand to be a detriment." (Vol. II Tr., 416.) Yet, the trial court responded:

8

So, you guys are willing to waive out any possible cross-examination impeachment or pending charges?* * *

I don't know if you want to waive that do you?

(Vol. II Tr., 416.) Appellant's counsel responded: "We're in a position where we can ask him about the pending charge based on the rules. I guess prior convictions, we can get into that." (Vol. II Tr., 417.) Yet, at another point, appellant's counsel stated: "[I]t was not my intention to even raise the issue of what [Wright is] currently charged with." (Vol. II Tr., 430.)

The trial court stated that appellant's former counsel's cross-examination of Wright at the bindover hearing was "essentially worthless." (Vol. II Tr., 420.) Appellee responded that the scope of such cross-examination could have been a "tactical decision" of former trial counsel. (Vol. II Tr., 420.)

Thereafter, the trial court concluded that appellee could introduce Wright's prior bindover testimony. The trial court noted:

* * * [E]ven though I feel that [appellant's former counsel's] cross-examination [of Wright] was totally ineffective, I cannot judge that as a part of the issue. It's not part of the credibility issue. It's merely the factual availability, and [appellee's] trial tactics argument is the general consensus of the Court's policy.

(Vol. II Tr., 422.)

Thus, appellee read to the jury Wright's testimony from the bindover hearing. During the bindover hearing, Wright testified as follows on behalf of appellee:

"Question. Did you have an opportunity to talk to [appellant] about an incident that took place outside the Wendy's City Center?

"Answer. Yes, sir.

9

"Question. Can you please tell me the content of that conversation.

* * *

"Answer. * * * [H]e asked me did I remember dude got killed that day downtown at the City Center. I was like, yeah. He said he did it.

* * *

" * * * He said that there was a robbery, that the dude had weed * * *."

(Vol. II Tr., 437-438.)

Wright testified as follows during the cross-examination of the bindover hearing:

"Question. Mr. Wright, you're known on the streets as Allen Nuts; is that correct?

"Answer. Yes, sir.

"Question. You also a member of the Crips, the Cut Throats?

"Answer. No, sir.

"Question. You're not a member of the Cut Throats?

"Answer. I don't know what that is, sir.

* * *

"Question. Okay. Didn't you tell the detective that you and an individual by the name of Mr. Harris were going to go beat up the subject, but decided to call police instead?

"Answer. I don't remember saying it.

* * *

10

"Question. So if an officer said that you said it, * * * that officer would be lying * * *?

"Answer. I guess so.

* * *

"Question. You never told them that you walked to the house at North Sixth Street and East Ninth Avenue on that day to beat him up?

"Answer. Huh-uh.

* * *

"Question. And if an officer testified today that you did make those statements, would that officer be lying?

"Answer. Shoot, I guess so."

(Vol. II Tr., 439-440, 442-444.)

Before the jury deliberated, the trial court instructed the jury that:

The defendant may be convicted as an aider and abettor or a complicitor as to each count in the indictment and their specifications.

Before you can find someone guilty with respect to complicity in the commission of an offense, you must find that [appellee] has proved beyond a reasonable doubt in this case, that * * * the Defendant either, purposely aided or abetted another in committing the [charged offenses]; or he purposely conspired with another to commit the [charged offenses].

(Vol. III Tr., 654-655.)

The jury convicted appellant as charged, and the trial court sentenced appellant to: (1) 20 years to life imprisonment for aggravated murder; (2) ten years imprisonment for aggravated

11

robbery; (3) eight years imprisonment for the second-degree robbery; (4) five years imprisonment for the third-degree robbery; and (5) seven years imprisonment for kidnapping. Thus, the trial court imposed maximum prison terms on the aggravated robbery and robbery counts, and imposed a non-minimum prison term on the kidnapping count. See R.C. 2929.14(A). In addition, the trial court ordered appellant to serve consecutively the sentences for aggravated murder, aggravated robbery, and kidnapping. Lastly, the trial court ordered one additional three-year prison term for the firearm specifications. In sentencing appellant to non-minimum and consecutive sentences, the trial court did not make findings that were once required in Ohio's felony sentencing statutes, but that were ultimately excised as unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.

*State v. Strickland*, No. 06AP-1269, 2008 WL 660314, at *1-5 (Ohio App. 10th Dist. March 13, 2008). Petitioner filed a timely appeal, in which he asserted the following assignments of error:

1. THE DEFENDANT-APPELLANT'S CONVICTION IS VOID AS VIOLATIVE OF DOUBLE JEOPARDY.

2. HE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF HEARSAY AND TESTIMONIAL EVIDENCE IN THE ABSENCE OF AN OPPORTUNITY TO CONFRONT THAT EVIDENCE.

3. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY CUMULATIVE ERROR.

4. THE TRIAL COURT PREJUDICIALLY AND CONSTITUTIONALLY ERRED IN SENTENCING THE DEFENDANT-APPELLANT TO NON-MINIMUM, CONSECUTIVE SENTENCES.

5. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

*See id.* On March 13, 2008, the appellate court affirmed the trial court's judgment. *Id.* On August 6, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Strickland,* 119 Ohio St.3d 1412 (2008).

On August 5, 2009, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States because he was convicted and sentenced in violation of the Double Jeopardy Clause and denied his right to confront his accusers. *See Legal Brief.* It is the position of the respondent that petitioner's claims are without merit.

### CLAIM ONE

In claim one, petitioner asserts that his reprosecution after the trial court declared a mistrial  violated the Double Jeopardy Clause.  The state appellate court rejected this claim as follows:

> [A]ppellant contends that the Double Jeopardy Clause barred his reprosecution and rendered void his conviction. We disagree.
>
> The Double Jeopardy Clause to the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." When a trial court declares a mistrial without the defense's consent, reprosecution violates the Double Jeopardy Clause unless there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. *Arizona v. Washington* (1978), 434 U.S. 497, 505-506. Conversely, when a trial court declares a mistrial at the defense's request, the Double Jeopardy Clause generally does not bar a retrial.

*Oregon v. Kennedy* (1982), 456 U.S. 667, 673; *United States v. Dinitz* (1976), 424 U.S. 600, 607. A narrow exception exists, however, where the defense's request for a mistrial is precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial. *Kennedy* at 679; *Dinitz* at 611.

Here, appellant's counsel requested a mistrial after Dawson, replying to a question from appellee, referenced a statement from Lewis. Appellant's counsel made the mistrial motion on the date that Dawson provided such testimony, and, the next day, appellant's counsel reiterated the need for a mistrial when the parties discussed the matter with the trial court. Ultimately, the trial court declared a mistrial.

Despite the trial court granting a mistrial after appellant's counsel made the request, appellant contends that double jeopardy nonetheless barred his re-prosecution and conviction. Appellant notes that his counsel actually withdrew the mistrial motion before the trial court discharged the jury and before the court journalized its decision in an entry.

Courts have held that a defense's withdrawal of a mistrial motion must precede the trial court's ruling on the motion "in order for the defendant to avoid the mistrial being declared at his or her behest." *State v. Hurd* (C.A.Iowa 1992), 496 N.W.2d 274, 277. As an example, in *Hurd,* the defense requested a mistrial in response to the prosecution asking a witness improper questions. The trial court granted the mistrial, but concluded that the prosecution did not intentionally provoke the mistrial and, therefore, the trial court refused to dismiss the case with prejudice. Immediately following this ruling, defense counsel asked to speak with his client. After a recess, defense counsel informed the trial court that the defendant wished to withdraw the mistrial motion and continue the case with the present jury. The trial court refused, stating:

I have serious reservations as to whether * * * trial should proceed under the current state of the record. I think the error

14

* * * has occurred and that there is nothing that I could tell the jury in the way of a cautionary instruction that would be curative * * *.

*Id.* at 276.

On appeal, the appellate court concluded:

* * * The record clearly establishes the defense requested a mistrial. Defense counsel interrupted the proceedings, he requested to be heard outside the presence of the jury, he urged the mistrial motion over a two-day period, and he stated, "I think a mistrial at this time is warranted. And I don't even think it's a close call." In addition, the State was adamantly opposed to the granting of the motion for a mistrial. It was not until after the district court ruled on the defendant's motion that the defense sought to withdraw it. * * *

*Id.* at 277.

The appellate court then concluded that the prosecution did not intentionally provoke the mistrial. Accordingly, the appellate court held that double jeopardy did not bar reprosecution of the defendant.

In *Earnest v. Dorsey* (C.A.10, 1996), 87 F.3d 1123, 1128, a defense counsel asked for a mistrial due to the trial court's "improper involvement in the case." The trial court noted that the defendant could be retried after the mistrial, and the trial court granted the mistrial on defense's motion. Defense counsel "then immediately attempted to withdraw the motions," but the trial court proceeded with the mistrial. *Id.*

On appeal, the defendant argued that "his attempt to withdraw the [mistrial] motions immediately upon the trial court's announcement that it would terminate the trial demonstrates that he did not in fact consent to a mistrial." *Id.* at 1129. The appellate court disagreed, stating that the defense:

15

* * * [S]tood by [the] mistrial motions in the face of the trial court's explicit statements that the motions were under consideration, that they might be granted, and even that they were not in his best interests. * * *

*Id.*

The appellate court also noted that the defense " 'was given ample opportunity prior to the declaration of mistrial to withdraw the motions and failed to do so.' " *Id.* In addition, the appellate court concluded that the trial court did not intentionally provoke the mistrial. Accordingly, the appellate court held that double jeopardy did not bar the defendant's reprosecution.

In *Tinsley v. Million* (C.A.6, 2005), 399 F.3d 796, 801, the defense requested a mistrial after discovering that the prosecution failed to disclose exculpatory evidence. The trial court granted the mistrial and stated that the mistrial would not bar reprosecution. In response, the defense objected to the mistrial declaration.

On appeal, the appellate court concluded:

On this record and under these circumstances, [the defense] consented to the mistrial. He moved for a mistrial; he did not attempt to withdraw the motion until after it had been granted * * *.

*Id.* at 812. The appellate court also found that the prosecution did not intentionally provoke the mistrial. Accordingly, the appellate court concluded that double jeopardy did not bar reprosecution of the defendant.

Here, like *Hurd, Dorsey,* and *Million,* the defense pressed for a mistrial, and the trial court declared the mistrial on the defense's motion. The trial court stated as such when it declared the mistrial during its conference with the parties. Likewise, in the entry journalizing the mistrial, the trial court

16

stated that "the mistrial in this action was predicated upon the request of the" defense. Moreover, like *Hurd, Dorsey,* and *Million,* the defense did not seek to withdraw the mistrial motion until after the trial court declared the mistrial. For these reasons expressed in *Hurd, Dorsey,* and *Million,* the defense's attempt to withdraw the mistrial motion after the trial court declared the mistrial does not preclude us from concluding, for purposes of a double jeopardy analysis, that the trial court granted a mistrial at the defense's request.

In so concluding, we find inapposite appellant's reliance on *City of N. Olmsted v. Himes,* Cuyahoga App. No. 84076, 2004-Ohio-4241. In *Himes,* the Eighth District Court of Appeals examined whether the Double Jeopardy Clause precluded the reprosecution of a defendant. *Id.* at ¶ 34-46. After the defense had requested a mistrial for certain trial improprieties, the trial court indicated that it "felt * * * that a mistrial was warranted." *Id.* at ¶ 13. Eventually, the prosecution also requested a mistrial. Thereafter, the defense withdrew the mistrial motion, but the prosecution continued to request a mistrial. The court then ruled that:

* * * "[B]ased upon the motion it's been withdrawn from counsel for the defendant and the motion for the prosecution. I am going to grant a mistrial." * * *

*Id.* at ¶ 15. In a nunc pro tunc entry journalizing its decision to grant a mistrial, the trial court noted that it granted the defense's request for a mistrial. *Id.* at ¶ 18.

On appeal, the defendant noted that, even though the trial court's nunc pro tunc entry indicated that the mistrial was declared on the defense's motion:

* * * [T]he trial court could not have granted [the defense's] motion because it was withdrawn, as was acknowledged by the trial court in the following statement:

"Based upon the motion it's been withdrawn from counsel for

17

the defendant and the motion for the prosecution. I am going to grant a mistrial."

*Id.* at ¶ 30-31.

The appellate court acknowledged that "it is difficult to ascertain from the record whose motion the trial court granted," and that the nunc pro tunc entry may have contained "factual errors." *Id.* at ¶ 32. Yet, ultimately, the appellate court concluded that the defense did withdraw the mistrial motion and that the trial court nonetheless declared a mistrial. The appellate court's decision then turned on the application of the "manifest necessity" standard that applies to a trial court declaring a mistrial without the defense's consent. *Id.* at ¶ 42-46.

Based on the above, we conclude that, in spite of the language that the *Himes* trial court used in the nunc pro tunc entry, the appellate court in *Himes* analyzed the case under the premise that the defense withdrew the mistrial motion before the trial court ruled on it. In this regard, *Himes* does not pertain to circumstances where, like here and like *Hurd, Dorsey,* and *Million,* the defense did not seek to withdraw the mistrial motion until after the trial court already ruled on the motion. As such, we conclude that *Himes* has no bearing on our above conclusions.

In concluding as above, we note that it is irrelevant to our analysis that appellant's counsel requested a mistrial without having first consulted appellant about his options. When a trial counsel requests or consents to a mistrial as a matter of trial strategy, that decision binds the defendant for double jeopardy purposes, regardless of whether the defendant participates in the decision. See *Watkins v. Kassulke* (C.A.6, 1996), 90 F.3d 138, 143.

Next, given our conclusion that the trial court granted a mistrial at the defense's request, we next conclude, pursuant to *Kennedy* and *Dinitz,* that the defense's request for a mistrial was

18

not precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite the mistrial. As noted above, appellant's counsel requested a mistrial after Dawson, replying to a question from appellee, referenced a statement from Lewis. Appellee's question was limited to asking Dawson about a prior statement by appellant, not Lewis, and, in this regard, Dawson's reference to Lewis was unexpected. Thus, we cannot conclude that appellee sought the statement that precipitated the mistrial. Therefore, we find that appellee did not goad the defense into declaring a mistrial. See *State v. Wood* (1996), 114 Ohio App.3d 395, 400.

For these reasons, we conclude that the Double Jeopardy Clause did not bar appellant's reprosecution and that the Double Jeopardy Clause did not render void appellant's conviction. Therefore, we overrule appellant's first assignment of error.

*State v. Strickland*, at *6-9. The factual findings of the state appellate court are presumed to be

correct. 28 U.S.C. §2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was

contrary to or an unreasonable application of clearly established federal law, or based on

an unreasonable determination of the facts in light of the evidence that was presented. 28

U.S.C. §2254(d) provides:

19

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit has summarized this standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case.

*Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir.2008) (quoting *Williams v. Taylor,* 529 U.S. 362 (2000)). Clearly established federal law are the legal principles embodied in a holding by the United States Supreme Court. Dicta in a Supreme Court decision isn not clearly established federal law:

> By its terms, §2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined

20

by the Supreme Court." Thus, "§2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams,* 529 U.S. at 412, 120 S.Ct. 1495. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citations omitted) (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. 1495).

*Daly v. Burt*, 613 F.Supp.2d 916, 935 (E.D. Mich. 2009).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977).

The Double Jeopardy Clause ... precludes the State from making " 'repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.' " *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). It protects defendants in cases "in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 1526-27, 6 L.Ed.2d 901 (1961). It also protects the defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336

> U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *accord Arizona v.. Washington,* 434 U.S. 497, 503-04, 98 S.Ct. 824, 829-30, 54 L.Ed.2d 717 (1978); *Dinitz,* 424 U.S. at 606, 96 S.Ct. at 1079; *Jorn,* 400 U.S. at 484-85, 91 S.Ct. at 556-57.

*Harpster v. Ohio,* 128 F.3d 322, 327 (6th Cir.1999). Where a mistrial is declared at the defendant's request, the Double Jeopardy Clause does not prohibit re-trial on the charges unless circumstances indicate that the prosecutor intentionally provoked, or goaded, the defendant into requesting a mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 676-79 (1982). Merely establishing that the prosecutor acted improperly is not sufficient to meet this standard; the defendant must show that the prosecutor acted with the purpose of aborting trial proceedings. *Id.,* at 675-76, citing *United States v. Scott,* 437 U.S. 82, 93 (1978).

> [A]ppellate courts, including the Sixth Circuit, have been very reluctant to find the intent necessary to satisfy the *Kennedy* standard. *See, e.g., United States v. Koubriti,* 509 F.3d 746, 749 (6th Cir.2007), *cert. denied,* --- U.S.----, 128 S.Ct. 1915, 170 L.Ed.2d 776, 2008 WL 717678 (Apr. 14, 2008); *United States v. Thomas,* 728 F.2d 313, 318 (6th Cir.1984) (no double jeopardy bar to retrial where the Court's "review of the record leads us to conclude that none of the prosecutor's behavior here will pass the intentional-goading-into-mistrial test of *Oregon* "); *United States v. Curry,* 328 F.3d 970, 973 (8th Cir.2003) (district court's ruling that retrial was not barred following post-trial grant of defendant's mid-trial motion for mistrial upheld on the basis that, despite the prosecutor's withholding of material impeachment evidence and improper comments during closing argument, these actions were not an attempt to goad defendant into requesting a mistrial); *United States v. Gonzalez,* 248 F.3d 1201, 1204 (10th Cir.2001) (government's appeal of the district court's grant of defendant's mistrial motion not barred because the government's intent in introducing allegedly prejudicial evidence may have been to obtain a conviction

> rather than a mistrial); *United States v. Strickland,* 245 F.3d 368,
> 384 (4th Cir.2001), *cert. denied,* 534 U.S. 894, 122 S.Ct. 213, 151
> L.Ed.2d 152 (2001) (government's concealment of discoverable
> materials held not intended to provoke mistrial); *Greyson v.
> Kellam,* 937 F.2d 1409 (9th Cir.1991) (no double jeopardy bar to
> retrial where misconduct showed the prosecutor's desire to
> *convict,* and not an intent to goad defendant into moving for
> mistrial).

*United States v. Barnwell,* No. 03-CR-80074-1, 2008 WL 4137905, at *11 (E.D. Mich. June 18,

2008).  For the reasons discussed by the state appellate court, this Court agrees that nothing

in the record supports a finding that the prosecutor intentionally goaded petitioner into

seeking a mistrial, and petitioner has failed to establish that the state appellate court's

factual finding in this respect was unreasonable.

Therefore, this Court must consider whether whether the state appellate court's

decision concluding that reprosecution of petitioner did not violate the Double Jeopardy

Clause, because he consented to the mistrial by failing to withdraw his request until after

it became clear the trial court would declare a mistrial warrants federal habeas corpus

relief.  28 U.S.C. §2254(d), (e); *Williams v. Taylor*.

"The important consideration, for purposes of the Double Jeopardy Clause is that

the defendant retain primary control over the course to be followed in the event of [judicial

or prosecutorial] error."  *United States v. Dinitz*, 424 U.S. at 609.  "Some choice to proceed

or start over must remain with the defendant at the time his motion is made" *id*., at n.10,

and "consent should be implied 'only where the circumstances positively indicate a

defendant's willingness to acquiesce in the [mistrial] order.'" *Glover v. McMackin*, 950 F.3d

1236, 1240 (6th Cir. 1991), quoting *Jones v. Hogg,* 732 F.2d 53, 57 (6th Cir.1984).  Where the trial court acts swiftly in declaring a mistrial, without providing fair warning or the opportunity to object until after declaration of the mistrial, the Sixth Circuit has held that the record will not support a finding of a defendant's consent to the mistrial.  *Id.*

> In *United States v. Crotwell,* 896 F.2d 437, 438-39 (10th Cir.1990), this Court held that a defendant who moved for a mistrial but then withdrew the motion at the hearing on the mistrial request had not consented to a mistrial. A similar approach was followed in *Weston v. Kernan,* 50 F.3d 633 (9th Cir.), *cert. denied,* 516 U.S. 937, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995). In *Weston,* the defendant made an oral motion for mistrial without specifying whether he sought the mistrial with or without prejudice. He did not withdraw his oral motion, but subsequently entered a written motion which made it clear that he sought only a mistrial with prejudice. The trial court declared a mistrial without prejudice, to which defendant immediately and repeatedly objected. The Ninth Circuit found that defendant did not consent to the mistrial without prejudice as declared. *Id.* at 637.

*Earnest v. Dorsey*, 87 F.3d 1123, 1129 (10th Cir. 1996).

Here, however, it was petitioner who requested the mistrial,[1] and who renewed his

---

[1]I recognize that there were no grounds for the mistrial. The testimony proffered by the prosecution was not hearsay. It was not offered for the truth of the matter stated. Christian Dawson testified about a statement made by a conspirator (Keon Lewis) to a co-conspirator (Strickland) in the course of the planning of Parks' robbery. Petitioner had no Confrontation Clause right to cross-examine Lewis about whether he made the statements. *Crawford v. Washington*, 124 S.Ct. 1354, 1364 and 1367 (2004). But the trial judge's error was invited by the defense when defense counsel made the motion for a mistrial based on a violation of the Confrontation Clause. After having the opportunity to consider the matter overnight and hear Dawson's testimony read, defense counsel did not withdraw the motion for a mistrial but proceeded with argument on the motion.

request the following day after the trial court's adjournment of proceedings.  Only after it became clear that the trial court would grant his request for a mistrial, did petitioner attempt to withdraw it.   Unlike the scenario in *Glover*, petitioner had more than adequate opportunity to clarify his request based on double jeopardy considerations prior to the trial court's ruling.  Nonetheless, he failed to do so.  The United States Court of Appeals for the Sixth Circuit has held that a defendant consents to a mistrial where he fails to withdraw his request until after it has been granted.  *See Tinsley v. Million*, 399 F.3d 796, 812-13 (6th Cir. 2005), citing  *United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir.1973); *United States v. Crotwell*, 896 F.2d 437, 438-39 (10th Cir.1990); *United States ex rel. Russo v. Superior Court*, 483 F.2d 7, 17 (3d Cir.1973).

> [U]nlike the defendant in *Crotwell,* [petitioner] did not attempt to withdraw the motions before they were granted. Neither did [he], like the defendant in *Weston,* make an intervening motion which could fairly be seen as an attempt to clarify, or withdraw and replace, his open-ended mistrial motions. Nor may [petitioner] explain his failure timely to object by claiming that he was misled into believing that the judge had decided not to grant his mistrial motions. *Cf. United States ex rel. Russo v. Superior Court,* 483 F.2d 7, 17 (3d Cir.) (defendant did not consent to mistrial when, after defendant moved for mistrial on grounds of jury deadlock, the judge allowed jury to deliberate another day before unexpectedly declaring mistrial for jury exhaustion without allowing defendant to object), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). Rather, [petitioner] stood by his mistrial motions in the face of the trial court's explicit statements that the motions were under consideration, that they might be granted, and even that they were not in his best interests.... "defense counsel was given ample opportunity prior to the declaration of mistrial to withdraw the motions and failed to do so." ... We therefore find that ... consent to mistrial may be properly implied. *See*

25

> *United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.) (consent was implied where defendants moved for a mistrial and failed to communicate their alleged change in position to the trial judge notwithstanding adequate opportunity to do so), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).

*Earnest v. Dorsey*, 87 F.3d at 1129.

Claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that he was denied his right to confront witnesses against him  due to admission of the out-of-court statements of Allen Wright and Keon Lewis. The state appellate court rejected this claim as follows:

> Appellant's second assignment of error concerns the trial court admitting into evidence out-of-court statements from Lewis and Wright. Appellant contends that such statements constituted inadmissible hearsay and that the admission of such statements violated his right to confront witnesses as guaranteed by the Sixth Amendment to the United States Constitution. We disagree.

> ***

> Here, appellant challenges the trial court's decision to admit into evidence out-of-court statements from Wright. Wright declined to testify at trial and invoked his Fifth Amendment privilege against self-incrimination on the advice of his attorney because he faced unrelated criminal charges. The trial court then admitted into evidence the sworn testimony that Wright previously provided at appellant's bindover hearing in juvenile court.

***

Generally, a witness who invokes his privilege against self-incrimination is considered unavailable under Evid.R. 804. *State v. Sumlin,* 69 Ohio St.3d 105, 108, 1994-Ohio-508. Yet, appellant argues that the trial court failed to consider whether Wright was properly invoking his Fifth Amendment privilege against self-incrimination.

The Fifth Amendment privilege against self-incrimination applies where the witness' answers could furnish a link in the chain of evidence needed to prosecute the witness. *Ohio v. Reiner* (2001), 532 U.S. 17, 20. When a witness asserts a Fifth Amendment privilege against self-incrimination, a court "has a duty" to determine if the witness' refusal to answer is justified. *State v. Jackson,* 92 Ohio St.3d 436, 447, 2001-Ohio-1266. Here, the trial court deemed justified Wright's decision to invoke the Fifth Amendment privilege against self-incrimination.

First, we note that the trial court had cause to conclude that Wright could incriminate himself by testifying about the Parks shooting, given that Wright's counsel expressed to the trial court fear that Wright's testimony about the Parks shooting could be linked to Wright's own pending charges through a theory of gang-related activity. Second, we recognize that Wright's pending criminal charges created a potential bias that Wright had in favor of appellee, given that Wright could try to curry favor with appellee. *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 104. Thus, the trial court reasonably concluded that Wright could be asked questions about his pending charges because bias of a witness is " 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska* (1974), 415 U.S. 308, 316. The trial court was skeptical that appellant's counsel would seriously desire to waive such questioning about Wright's pending charges, and the trial court had cause to be skeptical because, while appellant's counsel indicated, at one point, that the defense would not ask Wright about the pending charges, we

27

note that appellant's counsel had also otherwise expressed a desire to ask such questions. Likewise, while appellant contends on appeal that the trial court could have ordered the parties not to ask Wright questions about his pending charges, such a proposal would have been problematic here because, pursuant to *Davis,* bias is always relevant.

Next, appellant argues that Wright was not unavailable under Evid.R. 804 because appellee could have granted Wright immunity on his pending charges, which, according to appellant, would have deemed it unnecessary for Wright to invoke his privilege against self-incrimination. In support, appellant relies on *State v. Broady* (1974), 41 Ohio App.2d 17, 24, where we concluded that a trial court abused its discretion in denying a defense counsel's motion for immunity for a witness who asserted the privilege against self-incrimination. However, *Broady* does not speak to the issue of whether a witness, asserting the privilege against self-incrimination, cannot be deemed unavailable under Evid.R. 804 due to the prospect of immunity.

Appellant also relies on *United States v. Simpson* (2004), 60 M.J. 674, where the United States Army Court of Criminal Appeals held that:

"[A] prosecution witness is not 'unavailable' under [Military Rule of Evidence] 804[ ] even though he asserts his privilege against self-incrimination if he can be made available through the granting of testimonial immunity * * *. The prosecution has an option; it can either do without the evidence or it can introduce appropriate hearsay statements of an absent witness; however, if the absence can be cured by testimonial immunity, such immunity must be granted. * * *"

*Simpson* at 678.

However, such rationale has been questioned. See *United States v. Bahadar* (C.A.2, 1992), 954 F.2d 821, 827 (analyzing Fed.R.Evid. 804, which is analogous to Evid.R. 804, and

28

concluding that the argument that the prosecution "would be unable to invoke any of the rule 804[ ] hearsay exceptions in criminal cases, since the government always has the ability to immunize a witness who claims the fifth amendment privilege and thereby make that witness available[,] * * * would be an unrealistic reading of the rules of evidence"). Thus, in *United States v. Dolah* (C.A.2, 2001), 245 F.3d 98, the Second District Court of Appeals, analyzing the analogous Fed.R.Evid. 804, held that, "as a general matter, non-testifying witnesses [for the prosecution] who invoke the privilege against self-incrimination remain unavailable * * *, despite" the availability of immunity. *Dolah* at 103, abrogated on other grounds in *Crawford* at 64.

We are in agreement with the rationale and conclusions in *Bahadar* and *Dolah.* First, we note that, in Ohio, individuals receive transactional immunity from prosecution. See R.C. 2945.44; *State ex rel. Koren v. Grogan* (1994), 68 Ohio St.3d 590, 593. Under transactional immunity, an individual cannot be prosecuted "for or on account of any transaction or matter concerning which, in compliance with the order, the witness gave an answer or produced any information." R.C. 2945.44(B); *Grogan* at 592. Under R.C. 2945.44, it is the prosecutor that initiates the process for immunity and, thus, the statute necessarily recognizes the prosecutor's initial role in making the needed policy decisions on immunity. Thus, we would undermine the principles and dictates of R.C. 2945.44 if we were to accept the holding in *Simpson* and impose immunity considerations on the prosecution in regards to witnesses invoking the privilege against self-incrimination.

In addition, the rationale and conclusions of *Bahadar* and *Dolah* comport with the language of Evid.R. 804. Specifically, under Evid.R. 804(A), a witness' testimony will be deemed unavailable through a valid claim of privilege unless such unavailability "is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying." "Procurement" and "wrongdoing" connote "positive" action to preclude the witness from testifying. *Dolah* at 103. Generally,

29

absent the prosecution urging or manipulating a witness into asserting the privilege against self-incrimination, the prosecution's decision not to confer immunity on that witness is not "wrongdoing" or an act of "procurement" of unavailability. *Id.* at 104.

Here, there is no indication that appellee urged Wright to invoke the Fifth Amendment privilege against self-incrimination, and the record shows no prosecutorial overreaching. Although Wright invoked his Fifth Amendment privilege due to his pending criminal charges, there was no claim that the charges were improper, and we cannot deem it "wrongdoing" for the prosecution to seek criminal charges through the proper avenues. Thus, based on the above, we conclude that Wright was unavailable under Evid.R. 804 when he asserted his privilege against self-incrimination.

Next, appellant argues that Wright's former bindover testimony was not admissible under Evid.R. 804(B)(1) because, according to appellant, his counsel had no opportunity to cross-examine Wright when he gave the bindover testimony. Specifically, appellant contends that, while his former counsel was allowed to cross-examine Wright during the bindover hearing, he was ineffective in doing so. However, as denoted in the language itself, the opportunity for cross-examination portion of Evid.R. 804(B)(1) focuses not on the actual cross-examination itself, but on whether, as here, a party was allowed the opportunity for cross-examination. See *State v. Howard,* Montgomery App. No. 19413, 2003-Ohio-3235, ¶ 33.

Furthermore, appellant argues that Wright's former bindover testimony was not admissible under Evid.R. 804(B)(1) because the testimony lacked an "indicia of reliability" in accordance with the rule. Again, appellant argues as such by claiming that appellant's counsel was ineffective in cross-examining Wright during the bindover testimony. Appellant also recognizes that the trial court stated that the cross-examination "was totally ineffective." (Vol. II Tr., 422.)

Yet, initially, we note that the trial court ultimately recognized that the scope of appellant's former counsel's cross-examination fell within the realm of trial strategy. See *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, ¶ 45 (holding that "[t]he scope of cross-examination clearly falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel"). Moreover, we do not find that Wright's former bindover testimony lacked an "indicia of reliability" under Evid.R. 804(B)(1), given that Wright testified under oath and given that appellant's former counsel subjected Wright to cross-examination at that hearing. See *Howard* at ¶ 32-34. In deeming the cross-examination adequate for purposes of Evid.R. 804(B)(1), we note that appellant's former counsel cross-examined Wright on a few key points, such as Wright's potential gang membership and Wright's purported bias against appellant, i.e., Wright's purported plot to harm appellant.

Lastly, appellant argues that the trial court violated appellant's right to confront witnesses when it admitted Wright's former testimony into evidence. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Sixth Amendment is made applicable to the states through the Fourteenth Amendment of the United States Constitution. *Pointer v. Texas* (1965), 380 U.S. 400, 403-406. In *Crawford* at 59, 68-69, the United States Supreme Court held that, to conform with a defendant's federal confrontation rights, the "testimonial" statements of a witness absent from trial shall only be admitted into evidence against the defendant when the witness is unavailable to testify and when the defendant has had a prior opportunity to cross-examine the witness. Pursuant to *Crawford,* the Confrontation Clause only implicates testimonial statements. *Id.; State v. Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 59; *Davis v. Washington* (2006), 547 U.S. 813, 821.

In *Crawford,* the United States Supreme Court expressly declined to "spell out a comprehensive definition of 'testimonial.' " *Id.* at 68. However, the United States Supreme

Court held that the term "testimonial" covers, at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* Likewise, the United States Supreme Court gave three examples of "formulations" for " 'testimonial' statements" that historical analysis supports. *Crawford* at 51-52; *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, ¶ 19. The first deems testimonial all " ' *ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' " *Crawford* at 51, quoting Crawford's brief; *Stahl* at ¶ 19. The second includes all " 'extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' " *Crawford* at 51-52, quoting *White v. Illinois* (1992), 502 U.S. 346, 365; *Stahl* at ¶ 19. The third includes " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Crawford* at 52, quoting Amici Curiae brief; *Stahl* at ¶ 19.

Here, as appellee concedes, Wright's bindover testimony was "testimonial" pursuant to *Crawford.* We next determine that Wright was unavailable for purposes of the Confrontation Clause, given that he exercised his Fifth Amendment privilege against self-incrimination. We note that, in *Simpson,* the United States Army Court of Criminal Appeals indicated that a prosecution witness who asserts the Fifth Amendment privilege against self-incrimination is not unavailable for purposes of the Confrontation Clause if immunity for the witness is available. *Simpson* at 678. However, we decline to follow such a holding in *Simpson,* given our discussion above and given that the United States Supreme Court has generally recognized that a witness who has exercised a Fifth Amendment privilege against self-incrimination is unavailable for purposes of the Confrontation Clause. See *California v. Green* (1970), 399 U.S. 149, 165-168. Having so concluded, we next recognize, as noted above, that the defense had a prior opportunity to cross-examine Wright at the bindover proceedings. Thus, we conclude that the admission of Wright's

bindover testimony did not violate the Sixth Amendment Confrontation Clause. And, for all of these reasons, we conclude that the trial court did not abuse its discretion by admitting into evidence Wright's former bindover testimony.

Next, appellant challenges the trial court's decision to allow Dawson to testify that he overheard Lewis suggest to appellant that they commit a robbery against Parks because Parks had money and marijuana. Appellant contends that Lewis' out-of-court statement is hearsay and, thus, inadmissible under Evid.R. 802. Appellant further recognizes that Evid.R. 801(D)(2)(e) governs statements of a co-conspirator, and states:

* * * A statement is not hearsay if:

* * *

(2) * * * The statement is offered against a party and is * * * (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

Yet, appellant argues that Lewis' out-of-court statement is not admissible under Evid.R. 801(D)(2)(e) because appellee failed to provide "independent proof of the conspiracy" before eliciting the statement. Regardless, we conclude that Lewis' out-of-court statement does not constitute hearsay.

"A statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents." *State v. Williams* (1988), 38 Ohio St.3d 346, 348. "For example, an out-of-court statement * * * may be admitted * * * to show the effect on the hearer." *Id.* at 348, fn. 4. In this regard, Lewis' out-of-court statements are not hearsay because they are not pertinent for the truth of its contents, but to prove the purpose and motive of appellant joining Lewis to commit crimes against Parks. See *State v. Hill* (June 18, 1986), Hamilton App. No. C-850686. Such was relevant here because, as noted above, the trial court instructed the jury to consider whether

appellant aided and abetted or conspired with another to commit the crimes against Parks and because, pursuant to *State v. Curry* (1975), 43 Ohio St .2d 66, 70-71, motive is generally relevant in all criminal trials, even though the prosecution need not prove motive in order to secure a conviction.

Because we concluded that Lewis' out-of-court statement is not hearsay for the reasons we noted above, we need not review the admission of the statement under Evid.R. 801(D)(2)(e). See *State v. Riley* (Mar. 17, 1995), Lucas App. No. L-94-007; *State v. Weaver* (Nov. 21, 1984), Summit App. No. 11700. In addition, contrary to appellant's assertions, we also conclude that the admission of Lewis' out-of-court statement did not violate appellant's Sixth Amendment right to confront witnesses because the Sixth Amendment Confrontation Clause is not implicated when, as here, an out-of-court statement is not offered to prove the truth of the matter asserted. *Crawford* at 59, fn. 9; *State v. Smith,* 162 Ohio App.3d 208, 2005-Ohio-3579, ¶ 13. In addition, Lewis' out-of-court statement does not implicate the Confrontation Clause because the statement is not within the purview of testimonial evidence as *Crawford* defines that term. See, also, *Crawford* at 51 (recognizing that "testimony" "'is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' * * * An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a * * * remark to an acquaintance does not"); see, also, *Whorton v. Bockting* (2007), 127 S.Ct. 1173, 1183 (holding that the Confrontation Clause has no application to nontestimonial statements).

Accordingly, we conclude that the trial court did not abuse its discretion by admitting into evidence Lewis' out-of-court statement. Having already concluded that the trial court did not abuse its discretion by admitting into evidence Wright's prior bindover testimony, we overrule appellant's second assignment of error.

*State v. Strickland*, at *9-15.

To the extent that petitioner raises an issue regarding the alleged violation of state law or state evidentiary rules, his claim fails to warrant federal habeas corpus relief.  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.1988). " '[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.' " *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.2003) (quoting *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.1983) (other citations omitted)). The Court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes,* 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted). Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee,* 526 F.3d 388, 897 (6th Cir.2008).  The record fails to reflect such circumstances here.

As to petitioner's federal constitutional claim, the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial.  *Illinois v. Allen*, 397 U.S. 337, 388 (1970). In *Crawford v. Washington,* 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v.Roberts,* 448 U.S. 56 (1980), and re-defined the test for

determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court held in *Crawford* that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination:

> Where testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination.

*Id.,* at 1366. However,

> [t]he Court explicitly left untouched the application of *Roberts* to cases involving nontestimonial hearsay: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying *Crawford* have observed,

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements.... [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico*, 414 F.Supp.2d 744, 773 (E.D. Michigan 2006), citing *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir.2005); *Horton v. Allen,* 370 F.3d 75, 83-84 (1st Cir.2004); *United States v. Johnson,* 354 F.Supp.2d 939, 964 (N.D.Iowa 2005); *United States v. Savoca,* 335 F.Supp.2d 385, 391-92 (S.D.N .Y.2004). The Supreme Court declined to spell out a comprehensive definition of the term "testimonial," but stated that, at a minimum, the term

36

includes

> prior testimony at a preliminary hearing, before a grand jury,
> or at a former trial; and to police interrogations. These are the
> modern practices with closest kinship to the abuses at which
> the Confrontation Clause was directed.

*Crawford v. Washington*, 124 S.Ct. at 1374. A causal remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth Amendment. *Id.,* at 1364-5, 1367. Further,

> [t]he admission of a testimonial statement in and of itself is not
> enough to trigger a violation of the Confrontation Clause.
> Instead, the statement must be used as hearsay-in other words,
> it must be offered for the truth of the matter asserted.

*United States v. Pugh,* 405 F.3d 390, 399 (6th Cir.2005). A violation of the Confrontation Clause is subject to harmless error review. *Id.,* at 400, citing *Jordan v. Hurley,* 397 F.3d 360, 363 (6th Cir.2005).

Petitioner argues that admission of Wright's prior testimony at petitioner's bind-over hearing violated the Confrontation Clause because petitioner's defense counsel at that time, who had the opportunity to cross examine Wright at those proceedings was unqualified and performed in a constitutionally ineffective manner. *See Legal Brief.* This argument is not persuasive.

> [C]learly established federal law provides that the defendant
> be given an adequate opportunity to cross-examine the
> unavailable declarant; *Crawford* does not mandate that the
> cross-examination be effective or skillfully performed.
> *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354 ("[T]he Sixth
> Amendment demands what the common law required:
> unavailability and a prior *opportunity* for cross-examination.")

> (emphasis added); *see also Jackson v. Brown,* 513 F.3d 1057, 1083-84 (9th Cir.2008); *Stewart v. Booker,* No. 06-11741, 2008 WL 2478341, at *4 (E.D.Mich. June 17, 2008).
>
> ... The quality of Petitioner's cross-examination is not implicated by *Crawford,* so long as the *opportunity* to cross-examination was adequate. *See Glenn v. Dallman,* 635 F.2d 1183, 1187 (6th Cir.1980)[.]

*Strayhorn v. Booker*, – F.Supp. 2d –, No. 08-10345, 2010 WL 2505900, at *2 (E.D. Mich. June 18, 2000).

Admission of Lewis' out-of-court statements likewise fails to warrant relief. This Court agrees that Lewis' alleged statements to petitioner were neither testimonial, as that term is defined under *Crawford,* nor offered to establish the truth of those statements, but to establish petitioner's reason motive for committing the crimes alleged.

Claim two is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

38

herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


s/Mark R. Abel
United States Magistrate Judge